UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

JIMMIE LLOYD,

              Plaintiff,

      - against -

DR. JOSHUA LEE, DR. EUGENE MATEO,
DR. LESTER LIEBERMAN, DR. MARSHALL
TSE, DR. JANE SANJOSE, DR. YUNDO
PARK, FRANKLIN EDWARDS, SITE
MEDICAL DIRECTOR, and MAYOR MICHAEL
BLOOMBERG,

              Defendants.

- - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/14/08

**OPINION**

07 Civ. 2466 (DC)

**APPEARANCES:**    JIMMIE LLOYD
                Plaintiff <u>Pro</u> <u>Se</u>
                DIN# 06-R-0759
                Ogdensburg Correctional Facility
                One Correction Way
                Ogdensburg, New York 13669

                GILLIAN C. THOMAS, ESQ.
                Heidell, Pittoni, Murphy & Bach LLP
                Trial Attorneys for Corporation Counsel of the
                 City of New York
                 Attorneys for Defendants
                99 Park Avenue
                New York, New York 10016

**CHIN, District Judge**

      <u>Pro</u> <u>se</u> plaintiff Jimmie Lloyd brings this prisoner
civil rights action pursuant to 42 U.S.C. § 1983, alleging that
officials of Prison Health Services denied him adequate medical
care while he was incarcerated at the Manhattan House of
Detention and Riker's Island Corrections Building, in violation
of his constitutional rights. The defendants, Dr. Joshua Lee,
Dr. Eugene Mateo, Dr. Lester Lieberman, Dr. Marshall Tse, Dr.

Jane SanJose, Dr. Yundo Park, Franklin Edwards,[1] Site Medical
Director, and Mayor Michael Bloomberg move to dismiss the
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)
for failure to state a claim upon which relief can be granted.
Alternatively, defendants move for summary judgment pursuant to
Federal Rule of Civil Procedure 56.

For the reasons that follow, defendants' motion to
dismiss is granted in part and denied in part.[2] Lloyd's
principal claim -- that his civil rights were violated because he
did not receive proper medical treatment -- survives, for the
amended complaint asserts a plausible claim of deliberate
indifference. As an MRI eventually revealed, Lloyd suffered a
torn rotator cuff and a ripped tendon in his left shoulder. Yet,
Lloyd was not given an MRI until almost a year after he was
injured. The doctors did request an MRI, but they permitted nine
months to go by before the MRI was actually taken. Given the
seriousness of Lloyd's injuries and his repeated complaints of
severe pain, a reasonable jury could infer that the doctors acted

---

[1] It is not clear whether Franklin Edwards has been properly
served with the summons and complaint. He is not a party to the
current motion, as he has not consented to representation by
defense counsel.

[2] Defendants' motion for summary judgment is not being
considered at this early stage in the litigation, when the pro se
plaintiff has not had an opportunity to conduct discovery. See
Sereika v. Patel, 411 F. Supp. 2d 397, 405 (S.D.N.Y. 2006). The
Court notes that defendants have submitted evidence relating to
plaintiff's medical history. (Defs.' Notice of Mot. Exs. C-D).
The Court is not permitted to consider such evidence on a motion
to dismiss under Rule 12(b)(6). See Harris v. Westchester County
Dep't of Corrections, No. 06 Civ. 2011 (RJS), 2008 WL 953616, at
*25 n.8 (S.D.N.Y. Apr. 3, 2008).

with deliberate indifference by failing to take steps to ensure
that Lloyd was given an MRI and other medical care in a more
timely manner.

## BACKGROUND

### A. Facts

The facts alleged in the amended complaint are assumed
to be true for purposes of this motion.

Lloyd is currently an inmate at the Ogdensburg
Correctional Facility. He was arrested on May 18, 2005 in
Manhattan. (Am. Compl. ¶ 10). Upon his arrest, Lloyd was beaten
by arresting officers and suffered injuries to his left shoulder.
(Id. ¶ 11). On May 21, 2005, Lloyd was processed at the
Manhattan House of Detention. (Id. ¶ 14). The following day
Lloyd signed up for sick call and was examined by Dr. Lee. (Id.
¶ 15). Dr. Lee submitted an X-ray request and gave Lloyd Motrin
for his pain. (Id.).

On June 1, 2005, Lloyd returned to sick call and was
seen by Dr. Mateo. (Id. ¶ 16). Lloyd complained that he was
suffering from pain in his left shoulder and asked Dr. Mateo
about the status of his X-ray request. (Id.). Dr. Mateo
responded that the request for the X-ray was submitted and that
the procedure should take place "any day now." (Id.).

Two weeks later, Lloyd returned to sick call and was
seen by Dr. Mateo. (Id. ¶ 17). Lloyd inquired about the status
of the X-ray request, which was submitted on May 21, 2005.
(Id.). Dr. Mateo called the facility where X-rays are performed

-3-

and was told that the request was submitted on June 10, 2008 and
that the X-ray was not yet scheduled. (Id.).

On July 2, 2005, Lloyd was transferred from the
Manhattan House of Detention to Riker's Island Corrections
Building. (Id.). On July 3, 2005, Lloyd signed up for sick call
and was seen by Dr. Tse. (Id. ¶ 19). Lloyd informed Dr. Tse
that he never received an X-ray and that he was still
experiencing extreme pain as a result of the injuries he
sustained on the day of his arrest. (Id.). Dr. Tse gave Lloyd
Motrin for his pain and submitted a request for an X-ray. (Id.).

Finally, on July 17, 2005, the shoulder X-ray was
performed. (Id.). The results did not reveal any abnormalities.
(Id.). On July 23, 2005, Lloyd returned to sick call and was
seen by Dr. Park. (Id. ¶ 20). Because Lloyd was still
experiencing pain and the X-ray study was negative, Dr. Park
submitted a request for an orthopedist consult and gave Lloyd
"Naprosyn" to help relieve his pain. (Id.).

On August 4, 2005, Lloyd was examined by Dr. Lieberman,
an "orthopedic doctor." (Id. ¶ 21). Lloyd was unable to lift
his arm above his head and was also unable to hold his arm out in
front of himself at a ninety degree angle. (Id.). Dr. Lieberman
diagnosed the condition as "rotator cuff syndrome" and submitted
a request for both another X-ray and an MRI. (Id.). The results
of the second X-ray were also negative. (Id. ¶ 22).

On August 14, 2005, Lloyd went to physical therapy;
however, he was unable to stand treatment due to extreme pain.
(Id.). Lloyd returned to sick call following his August 16, 2005

-4-

physical therapy session. (Id. ¶ 23). He saw Dr. SanJose and asked for pain killers to alleviate his pain and discomfort. (Id.). During this visit, Lloyd approached Edwards, the Site Medical Director, explained his medical situation, and inquired about the status of the MRI request. (Id.). Edwards told Lloyd that scheduling could be delayed because it was done by the designated hospitals and the clinic had to wait for the hospitals to respond to requests. (Id.). Lloyd then asked whether physicians were required to follow up to ensure that MRIs are scheduled. (Id.). Edwards responded that it was "protocol" for physicians to follow up on pending procedures. (Id.).

On August 30, 2005, Lloyd signed up for sick call again and saw Dr. Tse. (Id. ¶ 24). Lloyd told Dr. Tse that he was frustrated with his medical treatment. (Id.). Dr. Tse "submitted another request to see Dr. Lieberman." (Id.).

On September 3, 2005, Lloyd visited the sick call clinic to try to determine why his MRI was delayed. (Id. ¶ 25). He spoke with Dr. SanJose, who submitted another request for an MRI at Queens Hospital. (Id.).

On September 10, 2005, Lloyd was seen by Dr. Lieberman for another consultation. (Id. ¶ 26). Dr. Lieberman noted that Lloyd's condition had not changed and submitted requests for a C-Spine X-ray and for appointments with two orthopedic specialists at Bellevue Hospital. (Id.). On September 21, 2005, Lloyd went to Bellevue Hospital for an appointment with the orthopedist specialists. (Id. ¶ 27). The specialists also diagnosed Lloyd's

-5-

injury as a rotator cuff syndrome and recommended that he have an MRI. (Id.).

On October 3, 2005, Lloyd was called to the clinic for an X-ray. (Id. ¶ 28). When he arrived he refused the X-ray, thinking that this was the same type of X-ray that he had already had twice before. (Id.). Lloyd later learned that the October 3, 2005 appointment was for a C-Spine X-ray, which was different from the previous X-rays and was ordered to provide an improved graphical reading of Lloyd's injury. (Id. ¶ 29). On November 15, 2005, Lloyd returned to the clinic to have the C-Spine X-ray. (Id. ¶ 30). A week later, Lloyd saw Dr. Lieberman, who reported that the C-Spine X-ray showed an "old, healed fracture on the lateral end of the clavicle." (Id. ¶ 31). Lloyd asked Dr. Lieberman about his options, since he had lost almost all mobility in his arm and was frustrated by the fact that the C-Spine X-ray results were not helpful in remedying the underlying medical problem. (Id.). Dr. Lieberman suggested that he return to physical therapy. (Id.). Lloyd questioned Dr. Lieberman about the delay in receiving an MRI. Dr. Lieberman responded that Queens Hospital never called to schedule the MRI and that he submitted another MRI request to Bellevue Hospital. (Id. ¶ 32). Lloyd then asked why he did not have an MRI while he was at Bellevue Hospital on two prior occasions. (Id. ¶ 33). Dr. Lieberman responded that the last MRI request was submitted after Lloyd's trips to Bellevue Hospital. (Id.). Dr. Lieberman then became upset by Lloyd's questioning and asked him to leave his office. (Id.).

-6-

On November 20, 2005, Lloyd returned to sick call and saw Dr. Park. (Id. ¶ 34). He asked Dr. Park if he could meet with Mr. Edwards. (Id.). Lloyd told Mr. Edwards that he believed his right to adequate medical care was being neglected because the physicians did not follow up on the MRI requests. (Id.). Mr. Edwards told Lloyd that once an MRI request is submitted "there is very little they can do." (Id.).

On December 1, 2005, Lloyd signed up for sick call again and was seen by Dr. Park. (Id. ¶ 35). He explained that he had been injured six months earlier and that he was waiting for an MRI to be scheduled for four months and that the condition of his arm had not improved. (Id.). Dr. Park told Lloyd that he would submit another MRI request and that he simply had to wait until the hospital scheduled the procedure. (Id.). Lloyd continued to sign up for sick call throughout the month of December in hopes of getting an MRI. (Id. ¶ 36).

On January 9, 2006, Lloyd pled guilty to the crime for which he was charged. (Id. ¶ 37). Three weeks later he was transferred to C-74(GMVC), where he stayed for two weeks until he was transferred to Ulster Correctional Facility. (Id.). Dr. Lieberman did not place Lloyd under a medical hold. (Id. ¶ 38). Instead, he indicated to the Department of Corrections that Lloyd no longer suffered from any injuries and could be transferred to another facility. (Id.).

Lloyd arrived at Ulster Correctional Facility and signed up for sick call. (Id. ¶ 39). He was not treated,

-7-

however, because the facility did not have a copy of his medical records. (Id.). On March 2, 2006, Lloyd arrived at Mohawk Correctional Facility. (Id. ¶ 40). He immediately signed up for sick call and explained his situation to the facility's physician, Dr. Grabo, who submitted a request for an MRI. (Id.). On April 24, 2006, Lloyd was called to the clinic to have an MRI. (Id. ¶ 41). When the results came back, Dr. Grabo explained that Lloyd had a "torn rotator cuff and a ripped supraspinatus tendon on the left shoulder, that needed to be repaired." (Id.). He then submitted a request for Lloyd to be seen by the clinic's orthopedic specialist. (Id.).

On May 17, 2006, Lloyd saw the specialist, who concluded that Lloyd needed surgery. (Id. ¶ 42). Albany approved the surgery on July 1, 2006. (Id. ¶ 44). The surgery took place in Rome Memorial Hospital on September 28, 2006, and recovery was expected to take at least one year. (Id.).

## B. **Procedural History**

Plaintiff filed this pro se action on February 13, 2007. Chief Judge Wood granted plaintiff leave to amend his complaint to name the individuals personally involved in the alleged violation of his right to medical care. The amended complaint was filed on May 15, 2007. Pursuant to 42 U.S.C. § 1983, Lloyd alleges violations of his rights under the Eighth, Fourteenth, and Ninth Amendments. Specifically, he claims that Lee, Mateo, Lieberman, Tse, SanJose, Park, and Edwards violated his civil rights by depriving him of an MRI and failing to resolve his medical issues. Additionally, Lloyd claims that

-8-

Mayor Bloomberg violated his rights by allowing Prison Health Services to provide inadequate medical services. Lloyd seeks money damages and the prosecution of defendants.

On May 30, 2007, the matter was reassigned to me. On January 11, 2008, defendants moved to dismiss the amended complaint, or, in the alternative, for summary judgment. After a number of extensions were granted, the Court received plaintiff's opposition papers on June 3, 2008.

## DISCUSSION

Defendants argue that the amended complaint fails to state a claim upon which relief can be granted, with respect to the Eighth, Ninth, and Fourteenth Amendments. Defendants also argue that they are entitled to qualified immunity. Finally, defendants contend that Mayor Bloomberg was not personally involved in the alleged violation and thus is not liable as a matter of law.

I discuss first the standards applicable to motions to dismiss pursuant to Rule 12(b)(6). I then discuss the claims against Mayor Bloomberg, the alleged Ninth Amendment violations, the claims under the Eighth and Fourteenth Amendments, and the qualified immunity defense.

## A. Motion to Dismiss Standard

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

-9-

The <u>Conley v. Gibson</u> standard, 355 U.S. 41, 45-46

(1957), which provided that dismissal was inappropriate "unless

it appears beyond a doubt that plaintiff can prove no set of

facts in support of his claim which would entitle him to relief,"

was recently abrogated by the Supreme Court in <u>Bell Atlantic v.</u>

<u>Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007). In <u>Twombly</u>, the Court

held that,

> [w]hile a Complaint attacked by a Rule
> 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's
> obligation to provide the grounds of his
> entitlement to relief requires more than
> labels and conclusions, and a formulaic
> recitation of the elements of a cause of
> action will not do.

<u>Twombly</u>, 127 S. Ct. at 1964-65. The Court also held that,

"[o]nce a claim has been stated adequately, it may be supported

by showing any set of facts consistent with the allegations in

the complaint." <u>Id.</u> at 1969.

The Second Circuit has interpreted the <u>Twombly</u> decision

as "'not requiring a universal standard of heightened fact

pleading, but instead, [as] requiring a flexible 'plausibility

standard,' which obliges a pleader to amplify a claim with some

factual allegation in those contexts where such amplification is

needed to render a claim plausible.'" <u>Jones v. Westchester</u>

<u>County Dep't of Corrections Med. Dep't</u>, No. 07 Civ. 3019 (CM),

2008 WL 2009674, at *2 (S.D.N.Y. May 6, 2008) (quoting <u>Iqbal v.</u>

<u>Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007)). The question is

whether the pleading alleges "'enough facts to state a claim for

relief that is plausible on its face.'" <u>Patane v. Clark</u>, 508

F.3d 106, 111-12 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

## B.  The Claims against Mayor Bloomberg

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of his constitutional or statutory rights by a person acting under color of state law. See 42 U.S.C. § 1983; Jones, 2008 WL 2009674, at *3. A defendant is not liable, however, unless he or she is actually involved, for personal involvement is "a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (internal quotations and citation omitted); see also Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1997) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995). Liability may not be premised on the respondeat superior or vicarious liability doctrines, "[n]or may a defendant be held liable merely by his connection to the events through links in the chain of command." Reynolds v. Goord, No. 98 Civ. 6722 (DLC), 2000 WL 235278, at *7 (S.D.N.Y. Mar. 1, 2000).

On the other hand, direct participation is not necessary. A supervisory official may be personally liable if she has "actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." Meriwether v. Coughlin, 879

-11-

F.2d 1037, 1048 (2d Cir. 1989). Thus, the personal involvement
of a supervisory defendant may be shown by evidence that

> (1) the defendant participated directly in
> the alleged constitutional violation, (2) the
> defendant, after being informed of the
> violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant
> created a policy or custom under which
> unconstitutional practices occurred, or
> allowed the continuance of such a policy or
> custom, (4) the defendant was grossly
> negligent in supervising subordinates who
> committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on
> information indicating that unconstitutional
> acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see also
Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (citing
Williams, 781 F.2d at 323-24).

Here, Lloyd's claims against Mayor Bloomberg must be
dismissed, for Lloyd has not alleged that the Mayor was
personally involved in any alleged constitutional deprivation.
Lloyd alleges that Mayor Bloomberg was involved only to the
extent that Prison Health Services is "contracted by Mayor
Bloomberg." (Am. Compl. ¶ 27). Even if true, this allegation is
insufficient, for Lloyd fails to allege that Mayor Bloomberg (1)
actually or directly participated in the constitutional
violation, (2) failed to remedy a wrong after being informed
through a report, (3) created a policy or custom under which
unconstitutional practices occurred, (4) was grossly negligent in
supervising subordinates who committed the wrongful acts, or (5)
exhibited deliberate indifference to the rights of inmates by
failing to act on information indicating that unconstitutional

-12-

acts were occurring.  See Colon, 58 F.3d at 873.  As the amended
complaint does not state a plausible claim against Mayor
Bloomberg, the claims against the Mayor are dismissed.

## C.  The Ninth Amendment Claims

The Ninth Amendment provides that "[t]he enumeration in
the Constitution of certain rights, shall not be construed to
deny or disparage others retained by the people."  U.S. Const.
amend. IX.  It is not an independent source of constitutional
rights that may be asserted in a civil rights action.  See Diaz
v. City of New York, No. 00 Civ. 2944 (JMA), 2006 WL 3833164, at
*7 (E.D.N.Y. Dec. 29, 2006).  The Ninth Amendment cannot serve as
the basis for a § 1983 claim because such a claim must be
premised on the violation of a right guaranteed by the U.S.
Constitution or federal law.  See Salaman v. DeJesus, No. 05 Civ.
1608 (JBA), 2008 WL 160592, at *3 (D. Conn. Jan. 15, 2008); In re
State Police Litig., 888 F. Supp. 1235, 1258 (D. Conn. 1995),
appeal dismissed, 88 F.3d 111 (2d Cir. 1996).

Defendants argue that plaintiff fails to state a Ninth
Amendment claim.  I agree.  The Ninth Amendment claim is
dismissed.

## D.  The Eighth Amendment Claim

### 1.  Applicable Law

"The Eighth Amendment, which applies to the states
under the Due Process Clause of the Fourteenth Amendment,
guarantees freedom from cruel and unusual punishment."  Jones,
2008 WL 2009674, at *3.  An inmate may be subjected to cruel and

-13-

unusual punishment in the medical context when prison officials breach their duty "to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

To prevail on an Eighth Amendment claim in the medical treatment context, a prisoner plaintiff must prove two elements: (1) a deprivation that is "sufficiently serious," i.e., a deprivation that presents a "'condition of urgency, one that may produce death, degeneration, or extreme pain,'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)), and (2) reckless indifference, that is, "defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm." Singleton v. Perilli, No. 03 Civ. 2271 (DC), 2004 WL 74238, at *3 (S.D.N.Y. Jan. 16, 2004). I discuss each of the two elements in more detail.

### a. **Objective Element**

The first element is objective and requires a "sufficiently serious" deprivation. In assessing whether the first element is met, courts usually make two inquiries. First, the court considers whether there was an actual deprivation of adequate medical care. Salahuddin, 467 F.3d at 279. Because prison officials have a duty only to provide reasonable care, officials who act reasonably in response to an inmate's medical condition cannot be found liable under the Eighth Amendment. Id. If a prison official fails to respond reasonably to an inmate's

-14-

medical condition, however, liability may arise. Id. at 279, 280
(citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

Second, the court considers "whether the inadequacy in
medical care is sufficiently serious." Salahuddin, 467 F.3d at
280. "This inquiry requires the court to examine how the
offending conduct is inadequate and what harm, if any, the
inadequacy has caused or will likely cause the prisoner." Id.
(citing Helling v. McKinney, 509 U.S. 25, 32-33 (1993)).

### b. Subjective Element

The second element of an Eighth Amendment claim is
subjective: "the charged official must act with a sufficiently
culpable state of mind." Salahuddin, 467 F.3d at 280 (citing
Wilson v. Seiter, 501 U.S. 294, 300 (1991)). In other words, a
plaintiff must show that the prison official acted with
"deliberate indifference" to the inmate's medical condition. Id.
"An official acts with the requisite deliberate indifference when
that official 'knows of and disregards an excessive risk to
inmate health or safety,'" Smith, 316 F.3d 178, 184 (quoting
Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

The Eighth Amendment is not violated by mere
negligence, medical malpractice, or differences of opinion
regarding medical treatment. Boomer v. Lanigan, No. 00 Civ. 5540
(DLC), 2001 WL 1646725, at *3 (S.D.N.Y. Dec. 17, 2001)). On the
other hand, a constitutional violation may exist even in the
absence of intentional conduct; an Eighth Amendment claim does
not require "conduct undertaken for the very purpose of causing

-15-

harm." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).
What is required is deliberate indifference: a state of mind
equivalent to the familiar standard of recklessness as used in
criminal law. Smith, 316 F.3d at 184 (quoting Phelps v.
Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam)). This
means that a plaintiff need not plead that the defendant acted
purposely or knowingly. A plaintiff must allege, however, that a
defendant acted with a mental state more blameworthy than
negligence. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003)
(citing Farmer, 511 U.S. at 835).

        In Smith, the Second Circuit held that, to demonstrate
deliberate indifference, a prisoner had to show more than "an
inadvertent failure to provide adequate medical care" by prison
officials. Smith, 316 F.3d 178, 184 (2d Cir. 2003) (citing
Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). A defendant's
actions must amount to an act or failure to act . . . that
evinces "a conscious disregard of a substantial risk of serious
harm." Hernandez, 341 F.3d at 144 (citing Chance, 143 F.3d 698,
703 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 99 F.3d 550,
553 (2d Cir. 1996)).

## 2. **Application**

        Lloyd argues that the delay in receiving an MRI
constitutes a violation of his right to adequate medical care.
Specifically, he alleges that defendants were "deliberately
negligent" in providing adequate medical care by (1) failing to
remedy his injuries; (2) failing to follow up on submitted MRI
requests; and (3) failing to diagnose his injuries.

Defendants contend that, at best, Lloyd's claims amount to a negligence or medical malpractice claims as he has not sufficiently pled deliberate indifference. Also, defendants argue that the amended complaint fails to support a claim that Lee and Mateo were deliberately indifferent to Lloyd's serious medical needs, because Lee and Mateo only treated Lloyd between May 22, 2005 and June 4, 2005, before an orthopedic consultation was performed or an MRI was contemplated.[3]

### a. Objective Element

The first requirement, the objective prong of the deliberate indifference test, is met because the amended complaint sufficiently pleads an actual deprivation of adequate medical care that was sufficiently serious. Lloyd contends that he was denied an MRI for months and that, as a consequence, his injury was not properly diagnosed and his surgery was unreasonably delayed. Lloyd also alleges that this inadequate medical treatment caused a condition of urgency, degeneration, and extreme pain, and delayed the surgery that was necessary to his recovery.

In Jones v. Westchester County Department of Corrections, 2008 WL 2009674, at *12, the court held that, on a motion to dismiss, the plaintiff "adequately pleaded" the objective element by alleging that he experienced chronic pain

---

[3] The Prison Litigation Reform Act (the "PRLA") requires an inmate to exhaust all administrative remedies before filing suit in federal court. See 42 U.S.C. § 1997e(a). Here, defendants have not alleged that plaintiff failed to exhaust his administrative remedies.

and that the pain "would have been alleviated" if he had been
given reasonable care. Here, the amended complaint alleges a
sixteen-month delay from the time Lloyd was injured until he
finally obtained relief in the form of surgery on his shoulder;
during this period he purportedly experienced extreme pain,
discomfort, and loss of mobility. The amended complaint
plausibly alleges that the delay in receiving the MRI contributed
to Lloyd's pain, discomfort, and loss of mobility, delayed his
surgery, and increased the time required for his injuries to
heal.[4]  Therefore, at this motion to dismiss stage, the objective
element of the deliberate indifference test is sufficiently
alleged.

## b.  **Subjective Element**

Lloyd also satisfies the subjective element of the
deliberate indifference test, at least as to many of the
defendants.  Lloyd contends that doctors did not follow up on
their MRI requests, thereby failing to remedy his medical issues.
He alleges that almost nine months passed from the time an MRI
was requested until he received one.  During this time, Lloyd
regularly visited sick call and met with the physician defendants
to discuss the delay in receiving an MRI and the delay in
remedying his medical condition.  Although the doctors

_____

[4] Where a pro se litigant is involved, the Court has an
obligation to "read the pleadings of a pro se plaintiff liberally
and interpret them 'to raise the strongest arguments they
suggest.'"  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)
(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

-18-

consistently blamed hospital staff for the delays, Lloyd plausibly alleges that the prison doctors were engaging in a blame shifting process, which resulted in the unreasonable delays. (Am. Compl. ¶ 27). Lloyd also alleges that Dr. Lieberman told the Department of Corrections that he could be transferred to an upstate facility because he had no further injuries. (Id. ¶ 38). After Lloyd was transferred, he finally received an MRI, his injuries were discovered, and surgery was performed to correct those injuries.

In Hathaway v. Coughlin, the Second Circuit held that a prison doctor could be found to have been deliberately indifferent to a prisoner's serious medical needs "in that he knew of and disregarded an excessive risk to [the prisoner's] health." Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994). The Hathaway court also held that a "jury could conclude that despite . . . request[s] [for further evaluations] and Hathaway's constant complaints" the prison doctor "did not take Hathaway's condition seriously" because he did not refer Hathaway to a specialist until afer a lawsuit was filed. Id. Additionally, the court noted that the fact that Hathaway was frequently examined by the prison doctor did not mean that the doctor was free from any § 1983 liability. Id. In fact, the court held that "[a] jury could infer deliberate indifference from the fact that [Dr.] Foote knew the extent of Hathaway's pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve Hathaway's situation." Id.

-19-

In Stevens v. Goord, plaintiff claimed that defendants' delay in treating his scoliosis-related respiratory distress and chest pain served as a basis for his Eighth Amendment claim. The court concluded that "judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case no treatment) may provide a basis of a[n] [Eighth Amendment] claim." Stevens v. Goord, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008). The court also noted that "'[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)). The court concluded that the doctor's decision not to pursue a course of treatment, "given the pain and discomfort that plaintiff continued to suffer for approximately eight additional months as a result, [went] beyond mere negligence and serve[d] as an additional basis for plaintiff's constitutional claim." Id. at 389.

Here, the amended complaint plausibly alleges that doctors knew that Lloyd was experiencing extreme pain and loss of mobility, knew that the course of treatment they prescribed was ineffective, and declined to do anything to attempt to improve Lloyd's situation besides re-submitting MRI request forms. A reasonable jury could infer deliberate indifference from the failure of the doctors to take further steps to see that Lloyd was given an MRI. The argument that the doctors here did not take Lloyd's condition seriously is plausible, given the length

of the delays. Nine months went by after the MRI was first requested before the MRI was actually taken. Once the MRI was taken, it showed that Lloyd suffered a "torn rotator cuff and a ripped supraspinatus tendon on the left shoulder, that needed to be repaired." (Am. Compl. ¶ 41). Had the doctors followed up on the numerous requests for an MRI, the injury would have been discovered earlier, and some of the serious pain and discomfort that Lloyd experienced for more than a year could have been averted. See Harris v. Westchester County Dep't of Corrections, 2008 WL 953616, at \*23 (despite plaintiff's sparse allegations as to defendant's conduct, at the 12(b)(6) stage plaintiff sufficiently alleged facts supporting a plausible claim that defendant was deliberately indifferent to plaintiff's medical needs). Therefore, accepting Lloyd's allegation as true and drawing all reasonable inferences in his favor, Lloyd has plausibly alleged that defendants were deliberately indifferent to his serious medical needs.

The amended complaint fails, however, as to Drs. Lee and Mateo, for they are alleged to have been involved only in the first few weeks after Lloyd's arrest and injury. Dr. Lee is alleged to have seen Lloyd only once, on May 22, 2005, just a few days after his injury. Dr. Lee requested an X-ray. He is not alleged to have had any further involvement with Lloyd at all. Dr. Mateo is alleged to have seen Lloyd only twice, on June 1, 2005 and approximately two weeks later. At that early stage, they cannot be charged with deliberate indifference for failing

to follow-up on the request for an MRI, for that request was not
made until weeks later, on August 4, 2005. The claim of
deliberate indifference is not plausible as to Drs. Lee and
Mateo, given their limited roles early in Lloyd's treatment.
Hence, the claims against Drs. Lee and Mateo are dismissed.

## E.    Fourteenth Amendment Claim

Pretrial detainees are protected by the Due Process
Clause of the Fourteenth Amendment rather than by the Eighth
Amendment's prohibition on cruel and unusual punishment, which
applies only to convicted prisoners. See, e.g., Weyant v. Okst,
101 F.3d 845, 856 (2d Cir. 1996); Vallen v. Carrol, No. 02 Civ.
5666 (PKC), 2005 WL 2296620, at *8 (S.D.N.Y. Sept. 20, 2005).
Because "an unconvicted detainee's rights are at least as great
as those of a convicted prisoner," Weyant, 101 F.3d at 856,
courts apply the same "deliberate indifference" test developed
under the Eighth Amendment to Fourteenth Amendment claims. See
Heisler v. Kralik, 981 F. Supp. 830, 835 n.1, 836 (S.D.N.Y.
1997).

Defendants argue that Lloyd fails to state a Fourteenth
Amendment claim. Because the Due Process Clause of the
Fourteenth Amendment protects pre-trial detainees, Lloyd brings a
viable Fourteenth Amendment claim to the extent that he alleges
that he was deprived medical care during the period prior to his
guilty plea. Because the same "deliberate indifference" test is
applied under both the Eighth and the Fourteenth Amendment, and
because Lloyd alleges the same negligent deprivation by the

-22-

doctors who treated him before his plea, his Fourteenth Amendment claim survives as well, except as to Drs. Lee and Mateo.

## F.    **Qualified Immunity**

"The doctrine of qualified immunity shields government employees acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their conduct violated clearly established rights of which an objectively reasonable official would have known." Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996); see also Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994) ("[Q]ualified immunity . . . shields public officials from liability for their discretionary acts that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotations omitted)). Even when a plaintiff's federal rights are well-defined, a defendant may successfully claim qualified immunity "if it was objectively reasonable for the public official to believe that his acts" were lawful. Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).

Defendants argue that they are entitled to qualified immunity because no reasonable jury could conclude that it was objectively unreasonable for them to believe that they were acting in a fashion that did not clearly violate an established federally protected right. On a motion to dismiss, a qualified immunity defense will prevail "if the complaint fails to allege the violation of a clearly established constitutional right." Williams v. Fisher, No. 02 Civ. 4558 (LMM), 2003 WL 22170610, at

-23-

*11 (S.D.N.Y. Sept. 18, 2003). Here, Lloyd has plausibly alleged a violation of a clearly established constitutional right. See id. As discussed above, Lloyd plausibly alleges that defendants (except Mayor Bloomberg and Drs. Lee and Mateo) acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. If Lloyd indeed is able to prove that defendants acted with deliberate indifference, qualified immunity will not shield defendants from liability. See id.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted in part and denied in part. All claims against defendant Mayor Bloomberg and Drs. Lee and Mateo are dismissed, and the Ninth Amendment claim is dismissed as to all defendants.

SO ORDERED.

Dated:   New York, New York
         August 14, 2008

DENNY CHIN
United States District Judge

-24-